FILED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CASE NO.: 5:15-cv-623.OC-30PRL

LYNN KASSEM,

   Plaintiff,

v.

MATT MARTIN, a/k/a
WILLIAM MATTHEW MARTIN
d/b/a MATT MARTIN SALES, individually, and
DEBI CONNOR a/k/a
DEBORAH CONNOR  d/b/a DEBI CONNOR SALES,
Individually, and
DC SALES & ENTERTAINMENT, LLC,
a Florida limited liability company, and
DC SALES AND MARKETING, LTD, a
foreign corporation,

   Defendants.

_____/

## COMPLAINT
## AND DEMAND FOR JURY TRIAL

   Plaintiff Lynn Kassem ("Kassem") as and for her Complaint against Defendants Matt

Martin a/k/a William Matthew Martin d/b/a Matt Martin Sales, individually ("Martin"), Debi

Connor a/k/a Deborah Connor and d/b/a Debi Connor Sales, individually ("Connor") and against

DC Sales & Entertainment, LLC ("DC Sales & Entertainment") and against DC Sales and

Marketing,  LTD ("DC Sales and Marketing") (collectively, "DC Sales") hereby states as

follows:

Complaint
Kassem v. Connor, et al.

## ALLEGATIONS COMMON TO ALL COUNTS

### Nature of the Action

1.      This is an action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1391 for:

| | |
|---|---|
| Count I | Breach of Contract; |
| Count II | Negligent Misrepresentation; |
| Count III | Fraud; |
| Count IV | Unjust Enrichment and Disgorgement; |
| Count V | Breach of Fiduciary Duties; |
| Count VI | Respondeat Superior for Negligent Supervision; |
| Count VII | Fraud; |
| Count VIII | Conspiracy to Commit Fraud and Fraudulent Concealment; |
| Count IX | Violation of F.S. §§ 772.103 et seq.; and |
| Count X | Aiding and Abetting Fraud; |
| Count XI | Strict Liability for Failure to Provide Timely Bill of Sale as Required by the Unfair and Deceptive Trade Practice Pursuant to F.S. Chapter 501, Part II and Demand for Injunction; and |
| Count XII | Strict Liability for Dual Agency under the Unfair and Deceptive Trade Practice Pursuant to F.S. Chapter 501, Part II and Demand for Transaction Documents |

2.      The underlying matter concerns a scheme by Martin to enrich himself, through sales commissions and engagement as independent contractor and agent, by inducing Kassem, via conspiracy and misrepresentations and fraud, to purchase horses as investments and for her young child to ride that were unsound, defective and otherwise not fit for the purpose for which Martin knew Kassem to be purchasing the horses. Through a series of equine purchase and sale transactions spanning four years, Martin, alone and sometimes together with Connor and DC Sales, fraudulently earned sales commissions on horses that were not suitable for Kassem's minor child or as investments. Further, Martin took unfair advantage of his position as Kassem's in-house equestrian trainer to manipulate Kassem to purchase the horses from Connor and others while breaching his fiduciary duties to Kassem.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 2

Complaint
Kassem v. Connor, et al.

3.     The total of the horse purchases, which are detailed below, totaled at least $925,000.00.

| Horse | Price | Commission or Profit to Martin | Maintenance Expenses | Total as of 12/1/15 |
|-------|-------|-------------------------------|----------------------|---------------------|
| Rosalie | $55,000 | $5500 | $104,000 | $164,500 |
| Axel | $10,000 | $1000 | $80,000 | $91,000 |
| Hunter Gatherer | $10,930 | - | $12,000 | $22,930 |
| City of Angels | $275,000 | $27,500 | $20,000 | $322,500 |
| Beau Chin | $49,500 | - | $40,000 | $89,500 |
| Pura Vida | $49,500 | $26,671 | $12,000 | |
| C Wonder | $150,000 | $15,000 | $36,000 | $201,000 |
| Beguiled | $165,000 | - | $36,000 | $201,000 |
| Monkey Man | $42,500 | - | $24,000 | $66,500 |
| Raleigh | $42,500 | - | $8000 | $50,500 |
| Djoli | $42,500 | - | $16,000 | $58,500 |
| Icon | $40,500 | - | $24,000 | $64,500 |
| **Total** | **$932,930** | **$75,671** | **$412,000** | **$1,332,430** |

4.     Almost all of the horses selected and presented by Martin, both alone and with Connor and DC Sales, have not performed as represented to Plaintiff.   As detailed more specifically below, often, after the purchase and sale of a given horse, Plaintiff would encounter grave soundness or behavioral problems that rendered the horses wholly unsuitable for Kassem's young daughter to ride and compete upon or as investments that were to be resold at a profit.  For example, Kassem only recently has discovered that the horse "Beguiled" had an adverse medical history which was not disclosed by Defendants.

5.     In order to mitigate her damages and curtail the continued high cost of maintenance of the horses, Kassem has been forced to liquidate some of the horses for a sales price far below the

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 3

Complaint
Kassem v. Connor, et al.

purchase price and has been forced to spend tens of thousands of dollar on veterinary care for the remaining horses which are now unable to compete.

6.      Despite demand by Kassem to Martin for rescission of the purchased horses Kassem still retains, Martin has refused to rescind the transactions or otherwise compensate Kassem for her losses caused by Martin's conduct.

7.      Many of the horses came from Connor and/or the Connor Defendants.  Connor and/or the Connor Defendants specified Florida as the proper venue and choice of law in their bills of sale for the horses. In some cases those Defendants sold the horses from Ocala, Florida and Martin traveled to Ocala to select those horses for Kassem.  See **Exhibits 1, 2 and 4 hereto.**

### The Parties

8.      Plaintiff Kassem is resident of the State of Georgia and is the mother of Alliah Kassem ("Alliah"), a now-17 year old rider who participates in highly competitive equestrian show jumping in the United States.  Kassem supports Alliah's riding activity by acquiring specialized and unique sport horses.

9.      Defendant Matt Martin a/k/a William Matthew Martin, sometimes d/b/a Matt Martin Sales ("Martin") is now, upon information and belief, a resident of the State of Tennessee.  At all times relevant hereto, by Mr. Martin held himself out to the public, including Plaintiff, as a professional horse trainer and expert in the purchase and sale of horses used for equestrian show jumping competition.   Martin repeatedly and systematically travelled to the State of Florida and elsewhere in furtherance of his conspiracy and fraud against Martin as described herein.  At

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 4

Complaint
Kassem v. Connor, et al.

times relevant hereto, in Florida, Martin conspired with Connor to sell to Kassem in Florida multiple horses, which contained undisclosed defects, to in order to earn commissions, justify his expenses and otherwise create benefit and value for himself and Connor.

10.     Defendant Deborah Connor a/k/a Debi Connor is, upon information and belief, a resident of the State of Florida, having an address at 15732 North Highway 329, Reddick Florida 32686, where she maintains and conducts her businesses of purchasing and selling horses as "Debi Connor Sales" and through her alter egos "DC Sales & Entertainment, LLC" a Florida limited liability company, and "DC Sales and Marketing, LTD" a Virginia corporation.  Debi Connor Sales, DC Sales & Entertainment, LLC and DC Sales and Marketing, LTD  ("collectively "DC Sales") are mere instrumentalities and alter egos of Deborah Connor and Deborah Connor engaged in extensive improper conduct individually, through her d/b/a Debi Connor Sales and through her two alter ego DC Sales entities, with respect to Plaintiff, as more specifically set forth below in the claims against them.

10.     Defendant DC Sales and Marketing, LTD, wholly owned by Debi Connor, is a Virginia corporation having an office and regularly conducting business at 15732 North Highway 329, Reddick Florida 32686.  DC Sales & Entertainment, LLC is a Florida limited liability company regularly conducting business at 15732 North Highway 329, Reddick Florida 32686. DC Sales & Entertainment was the alter ego entity utilized by Debi Connor and Martin to sell horses to Kassem for several of the transactions at issue herein.  Debi Connor, Debi Connor Sales and DC Sales and Marketing, LTD and DC Sales & Entertainment, LLC  are collectively "the Connor Defendants" herein.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 5

Complaint
Kassem v. Connor, et al.

12.     At all times relevant hereto, and with respect to the purchase and sale transactions for the horses and training of the horses and the minor Kassem, Defendant Martin was  employed by Kassem as an independent contractor for, and agent of, Plaintiff Kassem

13.     However, unbeknownst and undisclosed to Kassem, at all relevant times hereto, Defendant Martin was pursuing a scheme and conspiracy in Florida and elsewhere to sell Kassem defective horses at inflated values and otherwise perpetuate his engagement as Kassem's agent and contractor in order to obtain sales commissions from and have expenses  paid by Kassem.

## Jurisdiction and Venue

14.     This Court has subject matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship of the parties and the amount in controversy is in excess of $ 75,000.00.

16.     Many of the actions or omissions of the Defendants occurred within this District, specifically in Reddick, Marion County, Florida, and as more particularly set forth herein, many of the relevant contracts designate Florida as the appropriate venue and jurisdiction for disputes concerning the relevant transactions. **See Exhibits 1, 2, 3 and 4 hereto.**

17.     At all times relevant hereto and as set forth at length herein below, Defendant Martin traveled to Marion County, Florida and conducted business therein on behalf of Plaintiff Kassem and Martin and the Connor Defendants did conspire in Marion County, Florida to defraud Kassem.

18.     As well, venue in this District is therefore proper pursuant to 28 U.S.C. § 1391, in that many of the acts or omissions that give rise to the claims in this action occurred in this District and all Defendants herein are subject to the personal jurisdiction of the Court.

## Nature of the Dispute

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 6

Complaint
Kassem v. Connor, et al.

## I.     The suspect equine transactions.

20.     From 2011 until his abrupt and unplanned departure from Plaintiff's farm in August, 2015, Martin cultivated both a business and close personal relationship with Kassem and her child from his position as the minor Kassem's equestrian trainer.  Kassem and her daughter were new to high level equestrian activities and looked to Martin to provide professional guidance. By ingratiating himself to Kassem and inserting himself into Kassem's equestrian activities for Kassem's daughter, Kassem came to trust Martin and rely upon the professional judgment of Martin with respect to the purchase of horses suitable for investment and for her minor daughter.

### A.     Axel and Rosalie.

21.     In the Summer of 2011, Kassem had requested Martin locate a horse capable of carrying Kassem's daughter successfully in junior equitation and junior hunter classes.  Shortly thereafter, Martin approached Kassem and offered Kassem an opportunity to acquire two horses, "Axel" for $ 10,000 and "Rosalie" for $ 55,000 plus the trade in of Kassem's then-present horse, "Hollister." Relying upon the training and experience of Martin, as well as upon their professional and personal relationship, Kassem and her daughter accepted Martin's recommendation as to the  health and qualifications of Axel and Rosalie to safely carry Kassem's daughter in training and competition.   Kassem therefore purchased those two horses on July 28, 2011 for a total of $ 65,000 plus the horse Hollister for which a $ 5,000 credit was then applied.

22.     Martin earned a 10% commission on the purchase of each horse in the amount of $ 1,000 and $ 5,500, repectively.  At the time Martin sold Axel and Rosalie to Kassem, Martin owned Axel and Rosalie himself, but did not disclose that ownershi.  In fact Martin created several stories regarding the horses, including that the owners were going through a divorce and needed

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 7

Complaint
Kassem v. Connor, et al.

to sell the horses. Martin then used the straw seller name "Ricky Coward" on the prepurchase exams, although the Bill of Sale is between Matt Martin Sales and Kassem. The proceeds of the sale were wired directly to Martin's bank account. In fact, Martin had purchased Rosalie and Axel for a total of $ 30,000 through Peggy Welden, Debi Connor's sister immediately prior to selling them to Kassem for $65,000. Those transactions took place in Tennessee.

23.     Matt Martin knew or should have known that Rosalie was not sound when he sold her to Kassem. Rosalie had gone lame with her former owner and was at Peggy Welden's farm to be sold as a broodmare because of that prior soundness issue. Because Martin knew that Rosalie was not sound and would not pass a prepurchase exam, he gave the horse pain relieving drugs to mask the lameness of the horse and then encouraged the Kassems not to take radiographs or preform a drug screen on Rosalie, the horse which was being purchased for $ 55,000.

24.     Shortly after purchasing Rosalie and Axel, both horses were lame and could not be ridden. Eventually, Martin could no longer cover Rosalie's unsoundness with drugs and she was retired as a broodmare.

     **B.     Hunter Gatherer.**

25.     After Rosalie could no longer be ridden by Alliah, Martin leased Alliah a horse he owned named "Hunter Gatherer". Kassem paid Martin $ 10,930 for a six month lease on the horse. Hunter Gatherer was also not an appropriate horse for Alliah and would consistently refuse to jump jumps, placing Alliah in harm's way.

     **C.     City of Angels.**

26.     In May, 2013, after Alliah had been thrown to the ground several times by Hunter Gatherer, Martin recommended Kassem purchase a horse named "City of Angels," which Debi

Complaint
Kassem v. Connor, et al.

Connor through DC Sales & Entertainment, LLC owned.   City of Angels was priced at $275,000.   When Kassem inquired why the horse was so expensive, Connor and Martin represented to Kassem that the horse was qualified for the International Hunter Derby finals, and that such qualification made the horse worth at least $5 00,000.  These were false statements in that the qualification for the Derby did not make the market value of the horse  $ 275,000. Martin and Connor knew Kassem was inexperienced in the purchase, sale and valuation of horses, and that Kassem was relying upon Martin, their relationship, and his experience in the equine industry, to look after Kassem's best interests in the purchase and sale transactions he was undertaking on behalf of Kassem.   Relying upon Kassem's recommendation, experience and their relationship, Kassem purchased City of Angels for $ 275,000 on June 1, 2013.   Martin earned a commission of $27,500 on that transaction and Connor received $275,000.

27.     The City of Angels Bill of Sale designates Marion County, FL as the venue for any disputes arising from the agreement **[Exhibit 1 hereto]**.

28.     Within months of purchase, City of Angels began manifesting soundness and neurologic, and behavioral issues.  City of Angels began to stop at fences and would violently spin, throwing Alliah to the ground.    In January 2014, Alliah was riding City of Angels when the horse fell to the ground while competing in Ocala, Florida.  The horse was thereafter diagnosed with "kissing spine" disease, otherwise known as Dorsal Spinous Process ("DSP") impingement, where vertebrae of the spine begin to touch one another, causing the horse to develop behavioral and performance issues. DSP does not develop suddenly develop.

29.     Ultimately, the horse was declared to be unable to be used and Kassem was forced to make an insurance claim on the horse for loss of use.  Unfortunately, Kassem was only able to

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 9

Complaint
Kassem v. Connor, et al.

recover 70% of her loss, and so Kassem sustained damages of $ 82,500.   Kassem was also

required to surrender the horse to the insurance carrier to be destroyed.

30.     After City of Angels went lame and had to be surrendered to the insurance company,

Kassem was very clear with Martin that all of the horses she purchased, whether for Alliah or

investment purposes must have a complete prepurchase exam, including drug screen, full

cervical x-rays and be insured with loss of use coverage.   Since Martin's departure, Kassem has

discovered that Martin rarely, if ever, followed her instructions with respect to the other horses

he purchased or arranged for purchase as her agent.

31.     Thereafter, again relying on Martin's training and experience, as well as their supposed

friendship with Martin, in the Fall of 2013, Kassem invited Martin to be her resident trainer at a

farm she purchased in Fayetteville, Georgia and to manage her equestrian operation and

activities for the farm and for her daughter.   Amongst Martin's duties and responsibilities were:

*       recommending healthy and safe horses for Kassem's daughter;

*       participating in the prepurchase examination ("PPE") by a veterinarian and

        conveying those findings to Kassem prior to purchase of a horse;

*       training those horses once purchased;

*       training Kassem's daughter in her equestrian activities;

*       recommending healthy and safe horses for investment by Kassem;

*       obtaining all passports, ownership documents and registration paperwork for each

        horse;

*       completing all details necessary to adequately inspect and insure all horses

        purchased by Kassem;

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 10

Complaint
Kassem v. Connor, et al.

* supervising veterinary care and appointments for all the horses;

* coordinating all exhibition activities of the Kassem horses;

* operation, maintenance and safety of the Kassem farm facilities and farm house;

* advertising and marketing the Kassem investment horses for sale;   and

* supervision of staff to perform any and all of the above.

Martin was allowed to keep 25 to 30 of his personal and sale horses at the Kassem farm for free and live at the farm house in exchange for those duties.  That is not an insignificant in kind payment by Kassem, as the cost to house one given horse can average $ 500-700 a month.

32.     Once ensconced at Kassem's farm, Martin launched a specific and planned scheme to promote expensive horses to Kassem for purchase so that Martin would both earn a large commission on each sale and continue to operate as the trainer of those horses and of Kassem's daughter.

### D.     Investment Horses.

33.     Martin approached Kassem with horses to purchase as "investments" that they would later sell to offset the cost of Alliah's riding and running the farm.  Martin suggested that they would "partner" on these horses and also promoted certain horses to Kassem as investment horses, in which Martin would own a percentage of the horses along with Kassem as a partner. Kassem and Martin partnered on Pura Vida, Beau Chin and Icon.

### E.     Pura Vida.

34.     Thereafter, in February, 2014, Martin recommended to Kassem an expensive horse for purchase as an investment named "Pura Vida" for $ 55,000.  Trusting and relying upon Martin because of their upon Martin's supposed friendship, training and experience in the industry,

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 11

Complaint
Kassem v. Connor, et al.

Kassem agreed to purchase Pura Vida for $ 55,000 on March 1, 2014. The transaction took place in Florida, and Martin traveled to Florida to conduct that transaction.

35.    Martin wished to be a partner with Kassem in the horse, so Martin paid $ 5500 for 10% of Pura Vida. Martin never actually paid the seller for the horse. Rather, Kassem gave Martin the 10% ownership in exchange for part of the commission due on another horse, "C Wonder", discussed below. Pura Vida was later sold for $ 125,000, yielding a $ 32,171.32 payment to Martin for no investment of cash. This transaction took place in Florida and Martin failed to obtain a Bill of Sale when Kassem purchased or sold the horse.

**F.    Beau Chin**

36.    Martin next recommended the horse "Beau Chin" for purchase as an investment horse by Kassem as a high-level jumper who, again, was owned by Debi Connor. Again trusting and relying upon Martin because of their Martin's supposed friendship, training and experience in the industry, Kassem agreed to purchase Beau Chin for $ 55,000 in March, 2014. The transaction took place in Florida and Martin traveled to Florida to conduct that transaction. Martin did not request a drug screen be performed on Beau Chin during the prepurchase exam.

37.    Martin wished to be a partner with Kassem in the horse and again offered to pay $ 5500 for a 10% stake in the horse. Kassem requested proof of Martin paying $ 5500, but has never been provided with proof. Martin did not pay DC Sales for his portion of the horse Beau Chin.

38.    Although owing a duty to protect the interests of Kassem as his principal, Martin failed to obtain a Bill of Sale for Beau Chin conforming to Florida law. The Bill of Sale he did obtain did not conform to Florida law in that it failed to properly set forth the warranty disclaimer

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 12

Complaint
Kassem v. Connor, et al.

language required under F.A.C. 5H-26.004, which requires the Bill of Sale contain, in relevant

part:

> (7) The following statement: "As the person signing below on behalf of the Owner, I hereby confirm that I am the lawful Owner of this horse or the Owner's duly authorized agent, and I am authorized to convey legal title to the horse pursuant to this bill of sale."

> (8) The following statement: "As the person signing below on behalf of the Purchaser, I understand that any warranties or representations from the Owner or the Owner's agent that I am relying upon in acquiring this horse, including warranties or representations with respect to the horse's age, medical condition, prior medical treatments, and the existence of any liens or encumbrances, should be stated in writing as part of this bill of sale."

Thus, any warranties on the horse were not set forth. This omission became a significant failure

of the duties of Martin to Kassem, because the horse has not fulfilled the expectations set by

Martin and Connor. See **Exhibit 2 attached hereto.**

39.     Martin failed to obtain the passport for the horse, thereby restricting the use of the horse

and reducing the marketability of the horse. Debi Connor has admitted to having the horse's

passport, but has failed to send it to Kassem, despite repeated requests.

40.     After City of Angels was diagnosed with DSP, in the Spring of 2014, Alliah had no

horses to compete. Kassem instructed Martin to find two junior hunters for Alliah so she would

not be without a horse to compete again. Kassem and Martin agreed that he would locate two

"Junior Hunters," one with less experience, or "Green" and one with a great deal of experience

or "Made."

**G.     C Wonder.**

41.     In June of 2014, Martin recommended the purchase of another very expensive horse, "C

Wonder" by Kassem for use by Kassem's daughter. Again trusting and relying upon Martin as

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 13

Complaint
Kassem v. Connor, et al.

her agent, and because of their upon Martin's training and experience in the industry, Kassem agreed to purchase C Wonder for $ 150,000. The transaction took place in Kentucky and Martin was paid a $ 15,000 commission by Kassem.

42.     C Wonder was to be Alliah's "Green" Junior Hunter, however, he had very little show experience with a non-professional rider.

43.     Kassem only obtained C Wonder's prepurchase exam after Martin's departure from her employment. In the prepurchase exam it is specifically noted that C Wonder had a difficult lead change and that the Seller had made Martin aware of this issue. Never did Martin share this fact with Kassem, which would have influenced her desire to purchase the horse for Alliah as well as the price she was willing to pay.

**H.     Beguiled.**

44.     Also in June of 2014, Martin recommended the purchase of an even more expensive horse, "Beguiled" by Kassem for use by Kassem's daughter. "Beguiled" was to be Alliah's "Made" Junior Hunter, however, "Beguiled" had absolutely no experience jumping in the Junior Hunters. Again trusting and relying upon Martin because of their upon Martin's supposed friendship, training and experience in the industry, Kassem agreed to purchase Beguiled for $165,000. The transaction took place in Florida, where Martin traveled to conduct the transaction.

45.     Martin represented to Kassem that he knew of "Beguiled" through his good friend Debi Connor. However that transaction was used by Martin and Connor as an opportunity to take advantage of Kassem. Martin and Connor knew that Beguiled's Seller only did not have expectation of receiving more than $ 70,000 from the sale of that horse. Therefore, Martin and

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 14

Complaint
Kassem v. Connor, et al.

Connor conspired to price the horse at $ 165,000, and presented Beguiled with that $ 165,000 purchase price to Kassem. When Kassem, relying upon Martin as her agent, over paid Connor, through her agent Don Stewart, $ 165,000 for Beguiled, Martin and Connor conspired to fraudulently divert $ 95,000 of those proceeds from the original owner and split those extra proceeds amongst the Connor Defendants, their agent, and Martin. Martin graciously declined to charge Kassem another, separate, commission on the purchase of Beguiled.

46.     As well, Kassem only obtained "Beguiled's" prepurchase exam after Martin's departure. In the prepurchase exam it is noted that "Beguiled" has a bone chip in her hock. Martin did not disclose this fact to Kassem, which would have diminished her desire to purchase the horse for Alliah as well, as the price she was willing to pay. Additionally, the Defendants did not even own the horse at the time they sold it. The horse was owned by a third party who did not sell Beguiled until two days after Martin and Connor sold he horse to Kassem.

47.     From the time Alliah started riding Beguiled, the horse did not perform as advertised. Beguiled has a hard time in competition because she does not have a large stride. Kassem has since Beguiled was never shown at the 3'6 level by a non-professional and has a history of lameness. The "Made" horse that Kassem instructed Martin, as her agent, to purchase for her daughter, and the horse he recommended she purchase "Beguiled" were two very different animals.

48.     At present, Beguiled is lame and cannot be competed. The purchase and sale transaction for Beguiled took place in Florida and specified Florida Jurisdiction and Law. Again, Martin failed to obtain a legally sufficient Bill of Sale according to Florida law [Exhibit 3] and failed to insure the horse for loss of use. The horse was lame from the beginning and Martin did not

Complaint
Kassem v. Connor, et al.

perform a drug screen during the prepurchase because he knew it would be positive. Because

Beguiled had a bone chip and because Martin did not perform a drug screen, the horse could not

and cannot be insured for loss of use insurance. At this point, Kassem is left with a $165,000

useless horse.

49.     Martin's scheme to "churn" equine transactions to earn commissions and obtain horses to

justify his position with Kassem continued through 2014.

> **I.     Icon.**

50.     In December, 2014, Martin recommended Kassem purchase the horse "Icon" as an

investment horse.   Again relying upon Martin because of their upon Martin's supposed

friendship, training and experience in the industry, Kassem paid $ 40,500 for Icon, while Martin

supposedly contributed $4500 for 10% of the horse. Once again, Kassem has requested proof of

Martin's payment, and was never provided it.

51.     The Icon transaction took place in Florida, where Martin traveled to conduct the

transaction. Again, Martin failed to obtain a legally sufficient Bill of Sale according to Florida

law [Exhibit 4], and failed to insure the horse for loss of use.  Icon also has behavioral issues

that make him completely unsaleable.  The horse went lame and currently is not being used.

> **J.     Raleigh and Monkey Man.**

52.     Finally, in December, 2014, Martin again recommended two horses, "Raleigh' and

"Monkey Man" for purchase by Kassem as investment horses from Andy Kocher, LLC

("Kocher") for $42,500 each, for a total of $ 95,000.  Kassem paid $ 21,500 to Kocher and

traded the horse Axel for $ 63,500 in credit. Again relying upon Martin because of their upon

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 16

Complaint
Kassem v. Connor, et al.

Martin's supposed friendship, training and experience in the industry, Kassem agreed to make those purchases on December 9, 2014. Those transactions were conducted in Georgia by Martin.

53.     Martin never actually traded "Axel" and instead retained Axel himself and sold him for profit. Also upon information and belief, Kocher was only paid $ 5000 for Raleigh and $ 12,000 for Monkey Man. Kocher then paid Martin a commission on these sales of $ 4500 making the total $21,500, the amount paid Kocher by Kassem. These commissions, earned by Martin, were not disclosed by Martin to Kassem nor was Martin's dual agency. Martin's acceptance of a commission from the seller on the sale of horses to Kassem is a clear breach of fiduciary duty and makes Martin an undisclosed dual-agent according to Florida law.

54.     Martin also failed in his duties to Kassem in that he did not seek prepurchase exams performed on Raleigh and Monkey Man, despite Kassem's instructions to always do so. Martin also failed to have these horses insured for loss of use, which would have been impossible without a prepurchase exam. Ultimately Raleigh was traded away while Monkey Man is neither sound nor saleable and is living in a pasture.

55.     Martin did not have the two horses examined prior to purchase because he knew that they would not pass such examination. A week prior to selling Monkey Man and Raleigh to Kassem, Martin had shown the two horses to another trainer. Martin told this trainer that Monkey Man was priced at $30,000 specifically because he would not pass the vet and that Raleigh was priced at "Under $10,000." The other trainer thought both horses looked lame and did not purchase them.

    **K.     Djoli.**

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 17

Complaint
Kassem v. Connor, et al.

56.     Thereafter, and without the knowledge or consent of Kassem, Martin traded  the horse Raleigh  for a horse named "Djoli," which Martin again called an investment horse.

57.     Martin failed to have a prepurchase examination performed on "Djoli" as well.  Djoli consistently had problems doing lead changes and hence was very difficult to show successfully or sell.  After Martin's departure, Kassem was able to sell Djoli for only $6000, which was at a steep loss.  Djoli's purchasers indicated that the horse had malformations in its stifles, which caused the lead change issues.  Had Martin performed a prepurchase on Djoli, the stifle issue would have been uncovered and Martin could have avoided purchasing Kassem a bad horse. Kassem sustained a loss of over $ 36,500 on Dijoli.

58.     In each of the aforesaid transactions, Martin misrepresented the abilities, health and suitability of the horse for the purpose for which it was purchased and further failed to ensure the horses were adequately trained and maintained in a manner to ensure their soundness and health.

59.     During the period Martin was retained by Kassem as her agent, he did not sell any of the horses he had promoted to Kassem, while, upon information and belief, sold many of the 25 to 30 horses he owned but maintained at the Kassem property.   As well, Martin failed to memorialize in writing his equine transactions on behalf of Kassem.

**II.     Martin's failure to supervise.**

60.     During the time Martin was in charge of the Kassem horses, farm and show operations, he was to supervise his staff to ensure those responsibilities were properly discharged.  After his departure in early August, 2015, Kassem discovered a litany of damages to her property including but not limited to:

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 18

Complaint
Kassem v. Connor, et al.

    \*    significant damage to the $ 9,000 golf cart owned by the farm and used in horse

shows, including involvement of same in several accidents;

    \*    deferred or non-existent farm maintenance, including unrepaired fence, unmowed
           paddocks and unmaintained riding arena;
    \*    overfilled manure dump, placed near a water source by Martin;
    \*    broken tractor and mower;
    \*    no pest control, leading to overpopulation of flies at barn; and
    \*    damage to the farmhouse including non-maintained pool and dog damage;
    \*    2 missing saddles;
    \*    crash of farm truck and horse trailer by staff of Martin.

61.    Martin therefore did not supervise his staff correctly in order to ensure the aforesaid damage to Kassem property did not occur.  In sum, Martin did not discharge his duties for which he was receiving free room and board for himself and his horses, and in fact, caused a great deal of damage to Kassem's real and personal property.

**III.    Martin's abrupt departure.**

62.    On July 28, 2015, Martin called a meeting with Kassem and her daughter.  At that meeting, he told Kassem that he was experiencing "health problems" caused by "heart and stress" and would be leaving the employ of Kassem immediately.  There was no forewarning of this announcement, and Kassem was utterly surprised and stunned, particularly given the generosity and friendship Kassem had extended to Martin.

63.    On August 5, 2015, Martin left the Kassem farm.  He cashed and retained the funds for all of the boarding and training checks payable for services for August, 2015 and has never returned those funds, despite request for same.

64.    Since Martin's departure, Kassem has expended thousands of dollars repairing the damage caused by Martin and his staff and has been required to employ another trainer to replace

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 19

Complaint
Kassem v. Connor, et al.

him.  As well, Kassem has sustained great loss of value of the horses and further has incurred

great expense feeding and maintaining all of the horses, including the "investment" horses,

Martin procured for Kassem.   All of Kassem's damages in the aggregate exceed the

jurisdictional amount of this Court.

65.    All conditions precedent to the within suit have either been waived, excused or

performed.

## Count I
## Breach of Contract

### Against Martin

66.    Plaintiff realleges and incorporates by reference herein ¶¶ 1 through 65 inclusive, of the

Allegations Common to All Counts, as though said paragraphs were set forth herein at length.

67.    Pursuant to an oral contract, and as evidence by the subsequent performance by the parties,

Martin was employed by Kassem as both her employee and agent for the duties and responsibilities,

and for the compensation set forth previously herein.

68.    Kassem performed all conditions, covenants and promises required of hereunder that oral

agreement by paying Martin his commissions, covering his expenses, and providing Martin housing

for himself, his staff and his 25 to 30 horses.

70.    In contrast, and as set forth more particularly above, Martin breached that contract by failing

to properly perform his duties under that contract, including but not limited to his failing to obtain

horses that maintained their soundness and value, were properly insured, by failing to properly

market the investment horses for sale, and by further failing to properly supervise his employees.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 20

Complaint
Kassem v. Connor, et al.

71.   As a result of Martin's breach of contract, Kassem sustained damages in excess of this
Court's jurisdictional amount.

WHEREFORE, Plaintiff Kassem demands judgment against Defendant Martin awarding
Plaintiff damages as permissible by law, including but not limited to the return of all
commissions, compensation for loss of value or use of the horses detailed herein, and for
incidental and consequential damages, prejudgment interest and such other relief as the Court
finds just and proper.

**Count II**
**Negligent Misrepresentation**

**Against Martin**

73.   Plaintiff realleges and incorporates by reference herein ¶¶ 1 through 65 inclusive, of the
Allegations Common to All Counts, as though said paragraphs were set forth herein at length.

73.   As set forth more particularly herein above, Plaintiff contracted with Defendant Martin
for the performance of all the duties and responsibilities set forth herein, including but not
limited to locating and recommending for purchase horses that were sound, healthy and free
from defect capable of either carrying Kassem's daughter successfully in competition and/or
being sold for profit as investments.

74.   Martin, as agent of Kassem, made the representations to Kassem that he had undertaken
his duties to investigate and recommend horses that were sound, healthy and free from defect
and, in the case of the investment horses, suitable for investment.  Martin also represented to
Kassem that he was using his best efforts to market the investment horses for sale.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 21

Complaint
Kassem v. Connor, et al.

75.     Martin accepted the benefits of Kassem's commission payments, free housing for himself, stalls for his horses and was aware that Kassem was relying upon Martin's superior training, knowledge and experience to locate and deliver appropriate horses and to market the investment horses for sale, as well as to allow Kassem's minor daughter to successfully compete in equestrian competition.

76.     At the time Martin made those representations to Kassem, he should have known those statements to be false and further known that Kassem would rely upon those representations when both engaging Martin as her agent and when making the horse purchases.

77.     Defendant Martin, as the agent of Kassem in the horse purchases, made the false representations to Kassem while simultaneously benefitting from the horse purchases and receiving sales commissions from Kassem.

78.     By virtue of the training, skill and experience of Martin, that Defendant knew or should have known that the statements he made to Kassem regarding the soundness, suitability and worth of the horses he brought to Kassem for purchase were false and/or misleading. As well, Martin did not disclose that he was the owner of Axel and Rosalie when he sold those horses to Kassem and accepted a sales commission in addition to profiting from the sale of those horses.

79.     By failing to undertake his duties and by making misleading statements to Kassem to churn the horse sales and thus "earn" commissions, Martin not only damaged Plaintiff financially, but put Plaintiff's daughter rat risk of injury or death. This failure is particularly true in the case of City of Angels.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 22

Complaint
Kassem v. Connor, et al.

80.     Defendant Martin knew or should have known that Kassem was relying upon him to properly recommend and select horses that were either suitable for Kassem's daughter or for investment.

81.     Plaintiff was justified in relying upon Defendants' statements as to the horses he selected because of his professional training, knowledge and skill.

82.     Plaintiff was further justified in relying upon Defendants to comply with all of his other contractual duties and responsibilities.

83.      But for the acts and omissions of Martin, Kassem would not have purchased the horses and would not have sustained damages which include but are not limited to: (a) loss of the purchase prices of the horses, in whole or in part but exceeding the jurisdictional amount of this Court; and (b) incidental, consequential damages, expenses, charges and commissions.

        WHEREFORE, Plaintiff Kassem demands judgment against Defendant Martin awarding Plaintiff damages as permissible by law, including but not limited to the return of all commissions, compensation for loss of value or use of the horses detailed herein, and for incidental and consequential damages, prejudgment interest and such other relief as the Court finds just and proper.

<u>Count III</u>
<u>Fraud</u>

**Against Martin**

84.     Plaintiff realleges and incorporates by reference herein ¶¶ 1 through 65, inclusive, of the Allegations Common to All Counts, as though said paragraphs were set forth herein at length.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 23

Complaint
Kassem v. Connor, et al.

85.    As set forth more particularly herein above, Plaintiff contracted with Defendant Martin

to undertake the specified duties as Kassem's horse and farm operations manager, trainer of her

horses and trainer of her daughter.

86.    Martin, as agent and employee of Kassem, made the representations to Kassem that he

had undertaken the his duties to investigate and recommend horses that were sound, healthy and

free from defect and, in the case of the investment horses, suitable for investment.  Martin also

represented to Kassem that he was using his best efforts to market the investment horses for sale.

Martin further made statements of material fact to Kassem which he knew to be false by:

* misrepresenting the market value of the horses City of Angels, Beau Chin, C Wonder, Beguiled, Monkey Man, Raleigh, Dijoli and Icon;
* representing that third parties owned Rosalie and Axel when in fact Martin owned those horses;
* misrepresenting the sales price of Beguiled was $ 165,000 when in fact the sales price was $ 70,000;
* misrepresenting the soundness and suitability of the horses City of Angels, Beau Chin, C Wonder, Beguiled, Monkey Man, Raleigh, Dijoli and Icon;
* misrepresenting the nature of his relationship with the Connor Defendants.

87.    Martin accepted the benefits of Kassem's commission payments, free housing for

himself, salary and stalls for his horses  and was aware that Kassem was relying upon Martin's

superior training, knowledge and experience to locate and deliver appropriate horses and to

market the investment horses for sale, as well as to allow Kassem's minor daughter to

successfully compete in equestrian competition.

88.    At the time Martin made those representations to Kassem, he knew those statements to

be false and further knew that Kassem would rely upon those representations when both

employing Martin and when making the horse purchases.

---

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 24

Complaint
Kassem v. Connor, et al.

89.     Defendant Martin, as the agent of Kassem in the horse purchases, made the false representations to Kassem while simultaneously benefitting from the horse purchases and command receiving sales commissions from Kassem.

90.     By virtue of the training, skill and experience of Martin, that Defendant knew that the statements he made to Kassem regarding the soundness, suitability and worth of the horses he brought to Kassem for purchase were false and/or misleading.   As well, Martin did not disclose that he was the owner of Axel and Rosalie when he sold those horses to Kassem and accepted a sales commission in addition to profiting from the sale of those horses.

91.     By failing to undertake his duties and by making misleading statements to Kassem to churn the horse sales and thus "earn" commissions, Martin not only damaged Plaintiff financially, but put Plaintiff's young daughter at risk of injury or death.   This failure is particularly true in the case of City of Angels.

92.     Defendant Martin knew that Kassem was relying upon him to properly recommend and select horses that were either suitable  for Kassem's daughter or for investment.

93.     Plaintiff was justified in relying upon Defendants' statements as to the horses he selected because of his professional training, knowledge and skill.

94.     Plaintiff was further justified in relying upon Defendants to comply with all of his other contractual duties and responsibilities.

95.     But for the acts and omissions of Martin, Kassem would not have purchased the horses and would not have sustained damages which include but are not limited to: (a) loss of the purchase prices of the horses, in whole or in part but exceeding the jurisdictional amount of this Court; and (b) incidental, consequential damages, expenses, charges and commissions.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 25

Complaint
Kassem v. Connor, et al.

WHEREFORE, Plaintiff Kassem demands judgment against Defendant Martin awarding Plaintiff damages as permissible by law, including but not limited to the return of all commissions, compensation for loss of value or use of the horses detailed herein, and for incidental and consequential damages, prejudgment interest and such other relief as the Court finds just and proper.

## Count IV
### Unjust Enrichment and Disgorgement

### Against Martin

96.    Plaintiff realleges and incorporates by reference herein ¶¶ 1 through 65, inclusive, of the Allegations Common to All Counts, as though said paragraphs were set forth herein at length.

97.    As an agent of Kassem, Defendant accepted sales commissions of at least $65,500, as well as free housing for himself and his staff and stalls and pasture for his horses, while not properly and fully discharging his duties to his principal Kassem, thereby damaging Kassem. As well, with respect to the "Investment Horses", Martin enriched himself by earning commissions and boarding and selling his own horses, thus diverting business opportunities from his partner Kassem and ignoring the Kassem-Martin investment venture.

98.    Martin then unexpectedly departed Kassem's employ, leaving Kassem with unsold and in some cases unsound horses, which Kassem has been required to maintain at her expense.

99.    With respect to the Axel and Rosalie purchases, Kassem did not disclose his ownership of those horses, which, had the transactions occurred in Florida, would have been a violation of F.A.C. 5H-26-002 and thus an unfair trade practice act by law. As a matter of common law, the failure to disclose the ownership of Axel and Rosalie was a breach of fiduciary duty of Martin to

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 26

Complaint
Kassem v. Connor, et al.

Kassem because Martin failed to disclose his financial interest in the transaction, and instead accepted both a commission from Kassem and the additional purchase monies of $ 65,000.

100.    Defendant Martin has now have received and enjoys possession and use of over $140,000 in combined commissions and purchase money, while Plaintiff Kassem has been saddled with unsound and unsuitable horses, loss of value and use of the horses, and an inability to market the horses herself.

101.    It is therefore inequitable for Defendant Martin to retain the commission and  purchase monies of $ 140,000.

WHEREFORE, Plaintiff demands judgment against Defendant Kassem awarding Plaintiff damages as permissible by law, including but not limited to the return of $ 140,500 in commissions and purchase monies, incidental and consequential damages, prejudgment interest and such other relief as the Court finds just and proper.

## Count V
## Breach of Fiduciary Duties

### Against Martin

102.    Plaintiff realleges and incorporates by reference herein ¶¶ 1 through 65 inclusive, of the Allegations Common to All Counts, as though said paragraphs were set forth herein at length.

103.    A fiduciary duty existed between Kassem and Martin because those parties specifically agreed to that relationship, with Kassem as principal and Martin as agent and also because Martin agreed to be Kassem's partner on the "Investment Horses."  As well, that fiduciary relationship with Martin as agent existed because Kassem relied on Martin to act on the

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 27

Complaint
Kassem v. Connor, et al.

Kassem's behalf and to look out for Kassem's best interests in the discharge of Kassem's duties as agent.

104.    By the aforesaid acts and omissions, Martin breached his duty of loyalty to Kassem, which obligated Martin to put his personal interests of Kassem first, ahead of Martin'sself interest, and to refrain from exploiting his relationship with Kassem relationship for Martin's personal benefit.  Martin additionally breached his fiduciary duties to Kassem because Martin engaged in self-dealing with respect to the Axel and Rosalie transactions and failed to disclose material facts with respect to the physical condition of City of Angels and other horses, the true ownership and purchase price of Beguiled, all as set forth herein below.

105.    Further, Martin owed those fiduciary duties by virtue of his engagement as Kassem's agent and by virtue of his superior knowledge in the equine industry, upon which Kassem was relying in employing Martin as his agent.  As an agent of Kassem, Defendant accepted sales commissions of at least $75,500, as well as free housing for himself and his staff and stalls and pasture for his horses, while not properly and fully discharging his duties to his principal Kassem, thereby damaging Kassem. As well, with respect to the "Investment Horses", Martin enriched himself by earning commissions and boarding and selling his own horses, thus diverting business opportunities from his partner Kassem and ignoring the Kassem-Martin investment venture.

106.    With respect to the equine purchase transactions for Kassem which Martin conducted in Florida, being the horses City of Angels, Beau Chin, Pura Vida, Beguiled and Dijoli, Martin failed to obtain bills of sale conforming to Florida law, despite his fiduciary duty to do so as the agent of Kassem as principal.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 28

Complaint
Kassem v. Connor, et al.

107.   With respect to the Florida horse transactions Martin neither obtained nor provided Kassem written bills of sale to Plaintiff for those horses as required by to F.A.C. 5H-26.004.

108.   As a result of Martin's failure to obtain legally sufficient bills of sale, Kassem has been unable to seek rescission or other remedy from the sellers of the horses and has been damaged.

109.   As a result of Martin's breach of his other fiduciary duties to Kassem, and his abandonment of Kassem and his duties, Kassem has sustained damages including but not limited to paying unnecessary commissions, purchasing unsuitable and unsalable horses, as well as the costs of maintaining and insuring same.

WHEREFORE, Plaintiff Kassem demands judgment against Defendant Martin awarding Plaintiff damages as permissible by law, including but not limited to the return of all commissions, compensation for loss of value or use of the horses detailed herein, and for incidental and consequential damages, prejudgment interest and such other relief as the Court finds just and proper.

### Count VI
### Respondeat Superior
### Negligent Supervision and Training

#### Against Martin

110.   Plaintiff realleges and incorporates by reference herein ¶¶ 1 through 65 inclusive, of the Allegations Common to All Counts, as though said paragraphs were set forth herein at length.

111.   At all times relevant hereto, Defendant Martin was an agent and to or on behalf of Plaintiff Kassem.

112.   Martin failed to adequately supervise and train his staff to prevent the aforesaid damage to Kassem's real and personal property.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 29

Complaint
Kassem v. Connor, et al.

113.   More specifically, Martin was aware that at least one of his staff had lost his own license and   previously had negligently crashed his own truck and other vehicles.   Martin nevertheless placed that person behind the wheel of Kassem's truck and trailer, which was damaged by Martin's employee, causing Kassem to incur significant damages.  The harm to Kassem's property was thus foreseeable,  and Martin, as Kassem's  agent, had a duty to Kassem to take corrective action to avoid that harm.   Martin was  aware, or should have become aware of, the problems with that employee that indicated the employee's lack of suitability to operate Kassem's equipment, and yet Martin failed to take action to protect Kassem and her property.

114.   Defendant Martin negligently supervised his own staff members while the agent of Kassem.

115.   As a direct and proximate result of those acts and omissions by Martin, Kassem sustained damages.

116.   Plaintiff would not have incurred such damages but for the acts and omissions of Martin.

WHEREFORE, Plaintiff demands judgment against Defendant Martin awarding Plaintiff damages as permissible by law, including but not limited to incidental and consequential damages, prejudgment interest and such other relief as the Court finds just and proper.

**Count VII**
**Fraud**

**Against Connor individually and d/b/a Debi Connor Sales
And against the Connor Defendants**

117.   Plaintiff realleges against Plaintiff realleges against Debi Connor individually and d/b/a Debi Connor Sales and against DC Sales and Marketing, LTD and DC Sales & Entertainment,

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 30

Complaint
Kassem v. Connor, et al.

LLC (collectively, the "Connor Defendants") and incorporates by reference herein ¶¶ 1 through 65

inclusive, as though said paragraphs were set forth herein at length.

### A.    City of Angels.

118.    With respect to the horse City of Angels, Debi Connor, individually and through the other

Connor Defendants represented directly to Kassem that City of Angels was worth $ 275,000

because the horse had qualified for qualified for the International Hunter Derby finals, and that

automatically made the horse worth at least $500,000.  These were false statement in that the

qualification for the Derby did not make the market value of the horse even $275,000.

119.    The Connor Defendants knew Kassem was inexperienced in the purchase, sale and

valuation of horses, and further knew that Kassem was relying upon the representations by the

Connor Defendants as to the value of City of Angels during the purchase and sale transaction for

that horse.

120.    In reliance upon the Connor Defendants' representations as to the value of City of

Angels, Kassem purchased City of Angels for $ 275,000 from the Connor Defendants on June 1,

2013.

121.    The Connor Defendants accepted the $ 275,000 purchase price and were aware that

Kassem was relying upon their superior position, training, knowledge and experience to render

an opinion as to the value of City of Angels when they in fact knew such representation as to the

value of the horse was false and misleading.

122.    At the time the Connor Defendants made those representations to Kassem, the Connor

Defendants knew those statements to be false and further knew that Kassem would rely upon

those representations when purchasing City of Angels.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 31

Complaint
Kassem v. Connor, et al.

123.   The Connor Defendants made the false representations to Kassem as to the value of City of Angels in order to benefit from the transaction and receive the $ 275,000 purchase monies.

124.   Plaintiff was justified in relying upon the Connor Defendants' statements as to value of City of Angels because of the Connor Defendants held themselves out to Kassem as professionals in the industry of valuation, training and selection of show jumping horses.

**B.     Beguiled.**

125.   With respect to the horse Beguiled, that horse was consigned by its owner to the Connor Defendants in Florida with a sales price of $ 70,000. The Connor Defendants, directly and by and through their agent, Don Stewart, represented to Kassem that Beguiled was for sale for $165,000 and further represented to Kassem that Beguiled was worth $ 165,000.

126.   At the time the Connor Defendants made those statements to Kassem, the Connor Defendants knew those statements to be false.

127.   As with City of Angels, the Connor Defendants knew Kassem was inexperienced in the purchase, sale and valuation of horses, and further knew that Kassem was relying upon the representations by the Connor Defendants as to the value of Beguiled during the purchase and sale transaction for that horse when they in fact knew such representation as to the value of the horse was false and misleading.

128.   In reliance upon the Connor Defendants' representations as to the value of Beguiled, Kassem purchased Beguiled from the Connor Defendants for $ 165,000 in June, 2014.

129.   The Connor Defendants accepted the $ 165,000 purchase price and were aware that Kassem was relying upon their superior position, training, knowledge and experience to render an opinion as to the value of Beguiled.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 32

Complaint
Kassem v. Connor, et al.

130.    At the time the Connor Defendants made those representations to Kassem, the Connor Defendants knew those statements to be false and further knew that Kassem would rely upon those representations when purchasing Beguiled.

131.    The Connor Defendants made the false representations to Kassem as to the value of Beguiled in order to benefit from the transaction and receive the $ 165,000 purchase monies. The Connor Defendants likewise did not provide a Bill of Sale complying with Florida law and paid Martin an undisclosed commission on each horse, both in violation of F.A.C. § 5H-26-003 *et seq.*

132.    Plaintiff was justified in relying upon the Connor Defendants' statements as to their ownership of the horse and as to the value of Beguiled because of the Connor Defendants held themselves out to Kassem as professionals in the industry of ownership, valuation, training and selection of competition sport horses.

133.    But for the acts and omissions of the Connor Defendants, Kassem would not have purchased the horses City of Angels and Beguiled, and would not have sustained damages which include but are not limited to: (a) loss of the purchase prices of the horses, in whole or in part but exceeding the jurisdictional amount of this Court; and (b) incidental, consequential damages, expenses, charges and commissions.

WHEREFORE, Plaintiff Kassem demands judgment against Debi Connor individually and d/b/a Debi Connor Sales, against DC Sales and Marketing, LTD, and against DC Sales & Entertainment, LLC, awarding Plaintiff damages as permissible by law, including but not limited to the return of all commissions, compensation for loss of value or use of the horses detailed

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 33

Complaint
Kassem v. Connor, et al.

herein, and for incidental and consequential damages, prejudgment interest and such other relief

as the Court finds just and proper.

**Count IX**
**Conspiracy to Commit Fraud and Fraudulent Concealment**

**Against Matt Martin, Connor individually and d/b/a Debi Connor Sales**
**And against the Connor Defendants**

134.    Plaintiff realleges against Matt Martin, Debi Connor individually and d/b/a Debi Connor

Sales and against DC Sales and Marketing, LTD and DC Sales & Entertainment, LLC

(collectively, "Connor Defendants") and incorporates by reference herein ¶¶ 1 through 65 and ¶¶

117 through 134 above, inclusive, as though said paragraphs were set forth herein at length.

135.    By and through the aforesaid acts, Martin and the Connor Defendants agreed, in Florida and

elsewhere, to perform the unlawful acts of selling horses fair over market value and without the Bill

of Sale conforming to Florida law.   Those acts included, but were not limited to:

* Failing to perform or have performed veterinary prepurchase examinations on those horses;
* Failing to disclose or omitting health and behavioral issues from their descriptions of the horses and their value to Kassem;
* misrepresenting the market value of the horses to Kassem;
* misrepresenting the investment value of the horses to Kassem;
* failing to provide and execute Bills of Sale complying with F.A.C. 5H-26.003 *et seq.*, and commissions received by Martin from the Connor Defendants in those transactions;
* conspiring to sell at least one horse to Kassem, Beguiled, before having legal ownership of that horse;
* concealing the true sales price of the horses from Kassem;
* permitting or creating undisclosed, compensated dual agencies in the equine sales transactions, in violation of F.A.C. 5H-26.003 *et seq.*,;
* transmitting purchase, commissions and sales proceeds via interstate wire and other means;
* using interstate carriers to transport the horses purchased and sold; and
* concealing the financial interest of Martin in the transactions.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 34

Complaint
Kassem v. Connor, et al.

136.    Martin and the Connor Defendants did in fact under take the overt acts in furtherance of that conspiracy by selling three (3) horses to Kassem, being City of Angels, Beguiled and Beau Chin to Kassem for a total of $ 489,500, and by the aforesaid acts .

137.    Kassem was damaged by that conspiracy in that City of Angels was not fully insured and had to be surrendered to the insurance company for an $ 80,000 loss, Beau Chin was overvalued at $ 49,500, causing Kassem to incur a large veterinary bill and $ 40,000 in boarding bills on a horse that can only be sold for a loss, and Beguiled was overpriced by at least $ 95,000, causing Kassem to overpay by  $ 95,000 as well as incurring a large veterinary bills and $ 36,000 in board bills.

138.    The damages of Kassem were reasonably foreseeable.

139.    Plaintiff  Kassem is entitled to recover damages that will fully compensate Kassem which reasonably flow from the conspiracy to commit fraud and fraudulent concealment  of Martin and the Connor Defendants.

        WHEREFORE, Plaintiff Kassem demands judgment against Matt Martin and against Debi Connor individually and d/b/a Debi Connor Sale, against DC Sales and Marketing, LTD, and against DC Sales & Entertainment, LLC, awarding Plaintiff damages as permissible by law, including but not limited to the return of all commissions, compensation for loss of value or use of the horses detailed herein, and for incidental and consequential damages, prejudgment interest and such other relief as the Court finds just and proper.

### Count IX
### Violation of F.S. §§ 772.103 et seq.

**Against Matt Martin, Connor individually and d/b/a Debi Connor Sales
And against the Connor Defendants**

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 35

Complaint
Kassem v. Connor, et al.

140.    Plaintiff realleges against Matt Martin, Debi Connor individually and d/b/a Debi Connor Sales and against DC Sales and Marketing, LTD and DC Sales & Entertainment, LLC (collectively, "Connor Defendants") and incorporates by reference herein ¶¶ 1 through 65 and ¶¶ 117 through 139 above, inclusive, above, inclusive, as though said paragraphs were set forth herein at length.

141.    As set forth herein, Martin and the Connor Defendants associated with each other in Florida to form an enterprise to sell horses to Kassem at prices far above the fair market value of those horses and without a Bill of Sale conforming to Florida law in order to receive large fees and commissions while attempting to leave Kassem with no recourse against the Connor Defendants as the seller of those horses  (the "Connor-Martin Enterprise").

142.    As described forth in ¶¶ 1 through 65 and ¶¶ 117 through 141 above, the Connor-Martin Enterprise constitutes an ongoing organization, with a presence in Florida, with an ascertainable structure beyond the predicate acts and the conspiracy to commit such acts, by which Martin and the Connor Defendants functioned as a unit with a unified purpose.

143.    Martin and the Connor Defendants engaged in a pattern of unlawful activity, as set forth in herein ¶¶ 1 through 65 and ¶¶ 117 through  134 above, inclusive, to create a scheme by which they repeatedly induced Kassem, a person with no knowledge of the equine industry and who trusted those Defendants' superior position, knowledge and skill,  over-valued horses.

144.    By traveling to Florida and inducing Kassem to travel to Florida to purchase horses from the Connor Defendants, Martin promoted those equine purchase and sale transactions and assisted the Connor Defendants in conducting those transactions which were part of the Martin-Connor Enterprise.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 36

Complaint
Kassem v. Connor, et al.

145.    In violation of 18 U.S.C. §§ 1341 and 1343, Martin and the Connor Defendants utilized the

United States Postal Service and/or private and commercial interstate carriers and/or intersate wire

communications to communicate with Kassem, undertake their predicate acts of fraud, send and

transmit money procured by their conspiracy and to move the horses sold by Kassem or transferred

by Martin to the Connor Defendants.

146.    Martin and the Connor Defendants conducted or participated in the conduct of the Martin-

Connor Enterprise through a pattern of racketeering and criminal activity consisting of, inter alia, of

more than two acts of mail or wire fraud, interstate transportation in aid of that racketeering or

criminal activity, money laundering, transactions in property dereived from unlawful activity, and

transporation of fraudulently obtain monies, in violation of 18 U.S.C. §§ 1341, 1343, 1952, 1956,

1957 and 1958.

147.    Kassem was damaged by that conspiracy in that City of Angels was not fully insured and

had to be surrendered to the insurance company for an $ 80,000 loss, Beau Chin was overvalued at

$ 49,500, causing Kassem to incur a large veterinary bill and $ 40,000 in boarding bills on a horse

that can only be sold for a loss, and Beguiled was overpriced by at least $ 95,000, causing Kassem

to over pay by  $ 95,000 as well as incurring a large veterinary bill and $ 36,000 in board bills.

148.    The damages of Kassem were reasonably foreseeable.

149.    Plaintiff  Kassem is entitled to recover damages that will fully compensate Kassem which

reasonably flow from the conspiracy to commit fraud of Martin and the Connor Defendants.

150.    Plaintiff is also entitled to treble damages and reasonable attorneys' fees and costs by law.

WHEREFORE, Plaintiff Kassem demands judgment against Matt Martin and against

Debi Connor individually and d/b/a Debi Connor Sales, against DC Sales and Marketing, LTD,

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 37

Complaint
Kassem v. Connor, et al.

and against DC Sales & Entertainment, LLC awarding Plaintiff damages as permissible by law,

including but not limited to the return of all commissions, compensation for loss of value or use

of the horses detailed herein, treble damages by law, and for incidental and consequential

damages, prejudgment interest and such other relief as the Court finds just and proper.

### Count X
### Aiding and Abetting Fraud

**Against Debi Connor individually and d/b/a Debi Connor Sales**
**And against the Connor Defendants**

151.   Plaintiff realleges against Plaintiff realleges against Debi Connor individually and d/b/a

Debi Connor Sales, against DC Sales and Marketing, LTD and against DC Sales & Entertainment,

LLC (collectively, the "Connor Defendants") and incorporates by reference herein herein ¶¶ 1

through 65 and ¶¶ 117 through  149 above, inclusive, as though said paragraphs were set forth

herein at length.

152.   By and through the aforesaid acts, the Connor Defendants aided and abetted the fraud of

Martin in that they:

* did not own the horse Beguiled on June 3, 2014 or as late as June 10, 2014
* nevertheless offered to sell Beguiled, by and through their agent Don Stewart, to Martin, on behalf of Kassem, on June 3, 2015 and represented that the Connor Defendants, by and through their agent Don Stewart, owned the horse at that time **[Exhibit 3]**; and
* assisted Martin in concealing that the original owner of Beguiled was only receiving $ 70,000 for the horse, although Martin was selling Kassim the horse for $165,000.

153.   The Connor Defendants had knowledge of the actual fraud of Martin in that the horse

Beguiled was not sold by the previous owner until June 12, 2014 **[Exhibit 3].**

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 38

Complaint
Kassem v. Connor, et al.

154.    The Connor Defendants further had knowledge of the actual fraud of Martin in that the Connor Defendants were aware that the previous owner of Beguiled was only receiving $ 70,000 of the $ 165,000 Kassem paid for Beguiled;

155.    The Connor Defendants substantially assisted Martin in his fraud by obtaining an overpayment of $95,000 of purchase monies from Kassem and then diverting those proceeds from the original owner of Beguiled and splitting those proceeds amongst the Connor Defendants, their agents, and Martin.

WHEREFORE, Plaintiff Kassem demands judgment against Debi Connor individually and d/b/a Debi Connor Sales and against DC Sales and Marketing, LTD, awarding Plaintiff damages as permissible by law, including but not limited to the return of all commissions, compensation for loss of value or use of the horses detailed herein, and for incidental and consequential damages, prejudgment interest and such other relief as the Court finds just and proper.

## Count XI

### Strict Liability for Failure to Provide Conforming Bill of Sale as Required by the Unfair and Deceptive Trade Practice Pursuant to F.S. Chapter 501, Part II and Demand for Injunction

### Against Connor Defendants

156.    Plaintiff realleges against Debi Connor individually and d/b/a Debi Connor Sales, against DC Sales and Marketing, LTD and against DC Sales & Entertainment, LLC (collectively, the "Connor Defendants") and incorporates by reference herein ¶¶ 1 through 65 and ¶¶ 117 through 149 above, as though said paragraphs were set forth herein at length.

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 39

Complaint
Kassem v. Connor, et al.

157.   Florida Administrative Code 5H-26.003 *General Requirements Relating To the Sale or Purchase of Horses,* provides in relevant part that:

> (1) Any sale or purchase of a Horse or any interest therein in Florida shall be accompanied by a written bill of sale described in Rule 5H-26.004, F.A.C., except as provided in subsection (8). [Section (8) addresses auctions and public sale of thoroughbreds, not applicable here]

158.   Florida Administrative Code 5H-26.004 *Bill of Sale,* provides in relevant part that:

> Except as provided in subsection 5H-26.003(8), F.A.C., [not applicable to the within matter] the sale or purchase of a Horse or any interest therein in Florida **must be accompanied by a written bill of sale that must include at a minimum the following:**
>
> (1) The name, address, and signature of the Purchaser, the Owner, or their duly authorized agents. In a transaction solely relating to a stallion season, breeding right, or fractional interest in a Horse, the syndicate manager or Horse manager may serve as an acceptable agent in response to this requirement.
> (2) The name of the Horse, and its sire and dam if known.
> (3) The breed and registry status of the Horse, if applicable and if known.
> (4) The age of the Horse, if known.
> (5) The date of the sale.
> (6) The purchase price of the Horse.
> (7) The following statement: "As the person signing below on behalf of the Owner, I hereby confirm that I am the lawful Owner of this Horse or the Owner's duly authorized agent, and I am authorized to convey legal title to the Horse pursuant to this bill of sale."
> (8) The following statement: "As the person signing below on behalf of the Purchaser, I understand that **any warranties or representations** from the Owner or the Owner's agent that I am relying upon in acquiring this Horse, including warranties or representations with respect to the Horse's age, medical condition, prior medical treatments, and the existence of any liens or encumbrances, should be stated in writing as part of this bill of sale." [emphasis added].

159.   Florida Administrative Code 5H-26.003 *General Requirements Relating To the Sale or Purchase of Horses,* further provides in relevant part that:

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 40

Complaint
Kassem v. Connor, et al.

(13) A violation of any provision of Chapter 5H-26, F.A.C., resulting in actual damages to a person, shall be considered **an unfair and deceptive trade practice pursuant to Chapter 501, Part II, F.S.** [emphasis added]

160.    The Connor Defendants, either directly or by and through their agent Don Stewart, did not provide to Plaintiff Kassem written Bills of Sale to complying with F.A.C. § 5H-26-003 and 004 for the horses Beau Chin and Beguiled at their time of purchase **[Exhibits 2 and 3]**.

161.    The failure to provide those legally compliant Bills of at the purchase and sale of those horses has resulted in actual damages to Plaintiff. Therefore, the Connor Defendants are strictly liable under the Florida Unfair and Deceptive Trade Practices Act, F.S. §501.201 *et seq.* for commission of unfair and deceptive trade practice.

WHEREFORE, pursuant to F.S. § 501.2075 and § 501.207, Plaintiff demands judgment against each of the Connor Defendant for and requiring:

a.    Payment of penalty no less than $ 10,000 per incident pursuant to *Army Aviation Heritage Foundation and Museum v. Buis,* 504 F.Supp.2d 1254 (N.D. Fl. 2007);

b.    Reimbursement of all Damages to Plaintiff, including but not limited to the $ 489,500 in purchase money and overpayment, the costs of treatment, care and maintenance of the horses and all other actual damages;

c.    Reasonable attorneys' fees and costs of suit; and,

g.    Such other legal, equitable or appropriate relief as the Court finds just and proper.

### Count XII

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 41

Complaint
Kassem v. Connor, et al.

### Strict Liability for Dual Agency under the Unfair and Deceptive Trade Practice Pursuant to F.S. Chapter 501, Part II and Demand for Transaction Documents

### Against Martin

162.    Plaintiff realleges against Defendant Martin and incorporates by reference herein ¶¶ 1 through 65, inclusive, and ¶¶ 131 and 135 of the Allegations Common to All Counts, as though said paragraphs were set forth herein at length.

163.    Florida Administrative Code 5H-26.003 *General Requirements Relating To the Sale or Purchase of Horses,* provides in relevant part that:

**5H-26.003 General Requirements Relating To the Sale or Purchase of Horses.**

(1) Any sale or purchase of a horse or any interest therein in Florida shall be accompanied by a written bill of sale described in Rule 5H-26.004, F.A.C., except as provided in subsection (8).
(2) A person shall not act as a **dual agent** in a transaction involving the sale or purchase of an interest in a horse without:
(a) The **prior knowledge of both the Purchaser** and the Owner; and
(b) **Written consent of both the Purchaser** and the Owner.
(3) No person acting as an agent for a Purchaser or an Owner, or acting as a dual agent, in a transaction involving the sale or purchase of a horse or any interest therein, may receive consideration, compensation, fees, a gratuity, or any other item of value in excess of five hundred dollars ($500), related directly or indirectly to such transaction, from an individual or entity, including any consignor involved in the transaction, other than the agent's principal, unless:
(a) **The agent receiving, and the person or entity making, the payment disclose in writing the payment to both the Purchaser** and Owner; and
(b) **Each principal for whom the agent is acting consents in writing to the payment.**
(4) Any person acting as an agent for a Purchaser or an Owner or acting as a dual agent in a transaction involving the sale or purchase of a horse or any interest therein shall, upon request by his or her principal or principals, **furnish copies of all financial records and financial documents in the possession or control of the agent pertaining to the transaction** to the principal or principals. For purposes of this section, financial records shall not include the agent's or Owner's work product used to internally evaluate the horse.

---

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 42

Complaint
Kassem v. Connor, et al.

164.   Florida Administrative Code 5H-26.003 *General Requirements Relating To the Sale or Purchase of Horses,* further provides in relevant part that:

> (13) A violation of any provision of Chapter 5H-26, F.A.C., resulting in actual damages to a person, shall be considered **an unfair and deceptive trade practice pursuant to Chapter 501, Part II, F.S.** [emphasis added]

165.   With respect to the Florida horse transactions for Beau Chin, Beguiled and Icon, **[Exhibits 2, 3 and 4]** undertaken as part of the Martin-Connor Enterprise, Martin nether obtained nor provided Kassem written bills of sale to Plaintiff for those horses conforming to F.A.C. 5H-26.003 and 004.

166.   With respect to Axel and Rosalie, Martin did not disclose his ownership of the horses when he sold them to Kassem and violated F.A.C. 5H-26.003.

167.   With respect to the commissions he received as dual agent in the purchase and sale of Monkey Man and Raleigh, but did not disclose to Kassem, Martin did violated F.A.C. 5H-26.003.

168.   As a result of Martin's failure to obtain legally sufficient bills of sale, Kassem has been unable to seek rescission or other remedy from the sellers of the horses and has been damaged.

169.   As a result of Martin's breach of his other fiduciary duties to Kassem, and his abandonment of Kassem and his duties, Kassem has sustained damages including but not limited to paying unnecessary commissions, purchasing unsuitable and unsalable horses, as well as the costs of maintaining and insuring same.

WHEREFORE, Plaintiff Kassem demands judgment against Defendant Martin awarding Plaintiff damages as permissible by law, including but not limited to the return of all

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 43

Complaint
Kassem v. Connor, et al.

commissions, compensation for loss of value or use of the horses detailed herein, and for

incidental and consequential damages, prejudgment interest and such other relief as the Court

finds just and proper.

## Jury Demand

Plaintiff hereby requests trial by jury on all matters so triable as of right.

Respectfully submitted,

*Avery S. Chapman*

Avery S. Chapman, Esq.
FL Bar No. 517321
CHAPMAN LAW GROUP, PLC
12008 South Shore Blvd., Ste 107
Wellington, FL 33414
(Tel.) 561.753.5996
(Fax) 561.753.9966

Chapman Law Group, PLC
12008 South Shore Blvd. Suite 107
Wellington, Florida 33414
561.753.5996
chapmanlawgroup.net

Page 44