UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LYNN KASSEM,

    Plaintiff,

v.                                                                               Case No: 5:15-cv-623-Oc-30PRL

MATT MARTIN

    Defendant.

## ORDER

The parties have filed a number of motions related to the upcoming hearing on Defendants' sanctions motions seeking to dismiss Plaintiff's Complaint and to disqualify Plaintiff's counsel. (Docs. 165, 167, 168, 169, 170).

    **I.    Plaintiff's motion to dismiss or deny as moot sanctions (Doc. 167)**

As an initial matter, the scope and continued viability of the sanctions motions (which were filed by all of the Defendants) have been called into question with the recent dismissal of the Connor Defendants, leaving only Plaintiff's claims against Defendant Matt Martin. Based on the dismissal, the Court entered an Order on December 8, 2017 directing the parties to confer and advise the Court regarding the status of the pending motions. (Doc. 160). The parties advised the Court that the motions were still at issue and that the hearing would proceed. (Doc. 163). But now, despite that, Plaintiff has more recently filed a motion to dismiss or deny the motions as moot. (Doc. 167). Plaintiff contends that the motions are mooted by the settlement since they primarily concern access to Defendant Connor's email by Plaintiff's minor daughter and the effect of such access on the Connor Defendants; and, that although Martin joined in the motions, he has not sustained any injury from the Connor email access, nor can he establish any future harm.

Plaintiff's motion to dismiss or deny as moot (Doc. 167) is due to be **DENIED**. Although the motions focus primarily on the Connor Defendants (it was Debi Connor's email that was breached), the Court is satisfied that Martin has a sufficient interest in issues addressed by the motions. Indeed, at least one of the emails intercepted and sent by Plaintiff to Ms. Hartnett was from Connor to Martin. (Doc. 139-4 at 276). Moreover, the Court has the inherent power to *sua sponte* sanction parties or counsel for conduct that undermines the judiciary's ability to achieve the just, orderly, and expeditious disposition of cases. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 42-44 (1991); *Sciarretta v. Lincoln Nat. Life Ins. Co.,* 778 F.3d 1205, 1212-13 (11th Cir. 2015); *see also, Martin v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332, 1335 (11th Cir. 2002) (the Court has power to conduct an independent investigation to determine whether it has been the victim of fraud); *In re Mroz,* 65 F.3d 1567, 1575 (11th Cir. 1995) (the Court's "inherent power extends to a full range of litigation abuses"). The key to unlocking the Court's inherent authority to sanction is a finding of bad faith. *Chambers, supra,* 501 U.S. at 44–45; *In re Sunshine Jr. Stores, Inc.,* 456 F.3d 1291, 1304 (11th Cir. 2006).

Here, the parties have submitted unrefuted evidence that Plaintiff had access to Defendant Connor's personal email for a period of time before and after this litigation was filed, and that Plaintiff shared intercepted emails with others, including Nicole Imbriglio and Taryn Hartnett (who is her lawyer's paralegal). This conduct is sanctionable. *See e.g., Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1305-07 (11th Cir. 2009) (affirming district court exercising inherent authority and striking answer and counterclaim and entering default judgment as a sanction for improper interception of emails).

Then, Plaintiff's deposition testimony—in which she attempted to downplay the significance of the access—was directly at odds with other record evidence. If, in fact, her

testimony was dishonest, such conduct could also warrant sanctions. Finally, the involvement of the Chapman Law Group with the Connor email could be sanctionable. On at least four occasions Plaintiff sent emails from Ms. Connor's account to Ms. Hartnett. There is some dispute (actually between Plaintiff's deposition testimony and Ms. Harnett's affidavit) as to what actions Ms. Hartnett took, and when, and whether Mr. Chapman had knowledge of the access.

The hearing is an opportunity for Defendant to tie up any loose ends related to the above conduct. It is not intended to be a repeat of the exact same evidence that has already been provided to the Court. There is no need for the parties to elicit duplicative testimony from witnesses who have already been deposed in this case. Nor does the Court intend to take evidence or hear argument on purported discovery violations within the ESI discovery period, unless it somehow bears on the above conduct. The hearing is a **show cause hearing** as to why sanctions should not be imposed on Plaintiff and her counsel: Defendant Matt Martin will have an opportunity to finalize its evidence and argument related to these issues (without the need to present duplicative or unrelated testimony) and Plaintiff and counsel will have an opportunity to be heard and present evidence in response.

**II.  Defendant's motion to review content of Imbriglio's email account (Doc. 165)**

In efforts to prepare for the hearing, Defendant Martin seeks leave to review the content of Nicole Imbriglio's email account. (Doc. 165). The Court previously allowed specific ESI discovery including Defendant's access to Nicole Imbriglio's telephone and email information. *See* Doc. 115 at 14. Plaintiff, through her counsel, has asserted that Imbriglio was part of the Plaintiff's litigation team, and therefore, all communication in her email regarding the issues in litigation is protected by attorney-client privilege.

Defendants had their ESI expert review the emails, and prepare, prior to delivering the emails to Defendants, a privilege log which identified and removed material which might be subject to the claimed attorney-client privilege. The remaining emails were then segregated and forwarded to defense counsel, who ceased review of the documents after discovering other potentially privileged communications. Defense counsel then returned all of the emails to the ESI expert. Mr. Chapman was advised of the turn of events and was provided with (at least a majority of) the emails. To date, Defendants have not reviewed the email.

While Mr. Chapman may assert the privilege on behalf of Plaintiff, the privilege belongs to the client, and the client has the sole power to waive it. Under Florida law, a party asserting an attorney-client communication privilege must establish its applicability, including that the privilege was not waived. *Batchelor v. Geico Casualty Company*, 142 F.Supp.3d 1220, 1243 (M.D. Fla. 2015). In order to remain privileged, a communication must be made in confidence and kept confidential. *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003). Disclosure of privileged communications to a person outside the attorney-client relationship <u>waives</u> the protection of the privilege.

At her deposition on October 3, 2017, Plaintiff testified that she did not use Nicole Imbriglio as her agent in relation to this litigation, and that Nicole Imbriglio was never asked to participate or do investigations as part of the litigation process, nor to gather information that was relevant to the litigation. (See Doc. 165 at 3-8). While Plaintiff argues that Defendant cherry-picked excerpts from the deposition, Plaintiff has failed to identify any specific testimony that supports the claimed privilege.

As such, Plaintiff has failed to meet her burden to show that Plaintiff's communications with Imbriglio were subject to attorney-client privilege, and thus, any information she received is

not protected as she was not a part of her litigation team. Once the communications were shared or communicated to Imbriglio, as a non-protected third party, the privilege as to that information was at the very least waived by the Plaintiff.

Likewise, Plaintiff's general assertion that the Imbriglio email contains confidential business information is unavailing. Of course, the parties can protect the further dissemination of any confidential business information with an agreed upon protective order.

Accordingly, Defendant's motion (Doc. 165) is **GRANTED.** Plaintiff has failed to establish that the emails in Imbriglio's account are protected by Plaintiff's attorney-client privilege, and Plaintiff's disclosure to Imbriglio waived any privilege, thus, the emails may be reviewed by Defendant. To the extent those emails are now exclusively in the custody of Plaintiff, her counsel, or their expert, they shall be **immediately** turned back over to Defendant Martin.

### III. Plaintiff's motion regarding attorney and paralegal testimony (Doc. 168)

Defendant has listed Mr. Chapman and Ms. Hartnett as witnesses for the hearing. (Doc. 161). Plaintiff now seeks to limit their testimony. (Doc. 168). The Court will carry this motion with the case and resolve any challenges at the hearing. The Court contemplates, that at a minimum, Defendant will be entitled to question Ms. Hartnett regarding her receipt and handling of the Connor emails; and to question Mr. Chapman regarding his knowledge of the Connor email. He is ultimately responsible for how his firm communicates with its client. It appears, at a minimum, he either failed to create a communication structure in his firm to alert him of misconduct communicated to his employees (in this case his paralegal) by his client, or such a structure existed but some breakdown of it occurred. Notably, there is also testimony that he actually knew of the misconduct and argument can be made that information contained in the emails formed the basis for several counts of the complaint.

### IV. Plaintiff's motion for leave to issue third party subpoena (Doc. 169)

Plaintiff seeks to serve a third party subpoena for the bank records of Imbriglio to explore her financial ties to Martin. Plaintiff argues that the subpoena is necessary "to ascertain the scale and scope of the relationship between Imbriglio and Defendant Martin and to determine how the lawsuit might financially affect Imbriglio, should the Martin Defendants be faced with a large verdict against the Martin Defendants." (Doc. 169 at 4). However, Plaintiff has already deposed Martin and Imbriglio and has had the opportunity to explore their ongoing business relationship and any underlying bias. The Court is unpersuaded that the additional information that might be gleaned from the bank records are necessary to resolve the sanctions motions. Accordingly, Plaintiff's motion (Doc. 169) is **DENIED** at this time. This, however, does not preclude Plaintiff from reissuing the subpoena, if and when, the stay on discovery is lifted.

### V. Plaintiff's motion to take witness out of order (Doc. 170)

Plaintiff has filed a motion to allow Professor Keith Rizzardi to present and complete his testimony on January 8, 2018. (Doc. 170). Defendant has no opposition so long as Professor Rizzardi is not the first witness.

Upon due consideration, Plaintiff's motion (Doc. 170) is **GRANTED** with the caveat that Plaintiff should carefully consider whether Professor Rizzardi's testimony will be helpful. As discussed above, the Court intends to focus the hearing on whether sanctions should be imposed for (1) Plaintiff's access and dissemination of the Connor email; (2) Plaintiff's seemingly untruthful deposition testimony; and (3) the Chapman Law Group's knowledge and involvement with the Connor email.

**DONE** and **ORDERED** in Ocala, Florida on December 20, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties